IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| AMANDA K. MCENTYRE, | : | |
| Plaintiff, | : : : | |
| v. | : : | CASE NO.: 1:17-CV-177 (LAG) |
| SAM'S EAST, INC., JOHN DOE #1, and JOHN DOE #2, | : : : | |
| Defendants, | : : | |
| _____ | : | |

# ORDER

Before the Court is Defendant Sam's East, Inc.'s Motion for Summary Judgment (Doc. 44) and Plaintiff Amanda K. McEntyre's Motion for Partial Summary Judgment (Doc. 45). For the reasons set forth below, both Motions are **STAYED** pending the issuance of an opinion by the Supreme Court of Georgia.

Federal courts have discretion to certify "germane state law questions [that] are novel or unsettled" to the state's highest court for resolution. *Pittman v. Cole*, 267 F.3d 1269, 1285 (11th Cir. 2001) (citation omitted); *see also* O.C.G.A. § 15-2-9(a) (providing that federal courts may certify questions of law to the Supreme Court of Georgia when the proceeding involves "questions of the laws of this state which are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of this state"). "[W]here there is doubt in the interpretation of state law . . . a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*, 399 F.3d 1276, 1279 (11th Cir. 2005) (per curiam) (internal quotations and citation omitted); *see also Cascade Crossing II, LLC v. Radioshack Corp.*, 480 F.3d 1228, 1231 (11th Cir. 2007) ("Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying

the question to the state supreme court." (citation omitted)). This dispute involves a novel question regarding the applicability of O.C.G.A. § 40-6-248.1.

On February 22, 2016, Mary Louise McCall (McCall) purchased two mattresses and two box springs from Sam's East, Inc.'s (Sam's) Albany, Georgia store. (Doc. 13 ¶ 4). Sam's employees Eddie Shorter and Darion Ponder assisted McCall in loading the mattresses and box springs into her truck. (*Id.* at ¶ 5). There is a factual dispute regarding whether Shorter and Ponder simply loaded the mattresses and box springs into McCall's truck, or whether they also tied the mattresses and box springs to the truck in an attempt to secure them. (Doc. 44-1 at 5). ███████████████████████████████████████████████████████████████████████████████████████████████ While McCall was driving on the expressway, one of the mattresses became untethered and fell into the road. (Doc. 13 ¶¶ 12–13). Plaintiff's vehicle struck the mattress causing her injuries. (*Id.* ¶¶ 13–14). Prior to initiation of this action, Plaintiff and McCall entered into a settlement for $100,000. (Doc. 21 at 1). Plaintiff is suing Sam's for negligence, negligence per se, and punitive damages. (*See generally* Doc. 13).

The statute in question is O.C.G.A. § 40-6-248.1(b)(1), which states, in pertinent part:

> (b) No person shall operate or load for operation, on any public road, any vehicle with any load unless such load and any covering thereon is securely fastened so as to prevent such covering or load from:
> (1) Becoming loose, detached, or in any manner becoming a hazard to other users of the public road[.]

Plaintiff argues that the statute is "meant to apply to an individual who ultimately loads but is not an operator in control of a vehicle." (Doc. 57 at 8). Defendant argues that "control over the vehicle is required for a person to be considered to have loaded said vehicle for operation. (Doc. 44–1 at 13, 15). Thus, Defendant asks the Court to "interpret the phrase 'load for operation' . . . as not only loading the vehicle but loading the vehicle <u>with control over its operation</u>." (*Id.* at 16).

2

Defendant argues that the interpretation Plaintiff advances would "lead to potential criminal and civil liability for persons who have no control over how the load is secured or how the vehicle later is driven." (*Id.* at 16–17). According to Defendant, if the Court adopts Plaintiff's proposed interpretation, retailers "likely would no longer provide loading courtesies to customers out of fear that customers would refuse their securement assistance, leaving retailers with potential liability for improper load securement while having no control over the process." (*Id.* at 17). Instead, "[c]ustomers would likely be left looking for other customers to help them with a load, who would now be unwittingly liable for the securement of the load." (*Id.*). Plaintiff argues that "Sam's proposed interpretation of O.C.G.A. § 40-6-248.1 completely renders the language 'or load for operation' as pure surplusage" and "would *only* ever apply to an individual driving a loaded vehicle." (Doc. 57 at 7). Thus, Plaintiff contends that to adopt Sam's statutory interpretation would mean that "there is literally never a situation in which an individual who 'loads for operation' could ever be held criminally or civilly liable for negligently securing a load on the vehicle." (*Id.*). ███████████████████████████████████

"Georgia courts have not defined what is meant by 'load[ing] for operation' and have not interpreted whether the statute applies to those assisting others with loading merchandise into their vehicles." (Doc. 44-1 at 15). Nor have they stated whether the statute imposes strict liability on those to whom it is applicable for injury arising from a load becoming a hazard on a public road. Georgia courts have cited to O.C.G.A. § 40-6-248.1 three times, and all three opinions were in cases brought before the Georgia Court of Appeals. The Georgia Supreme Court has neither cited nor interpreted this statute. Two of the three Georgia cases are criminal cases, and no case interprets the law with respect to potential civil liability of businesses that load goods in customer's vehicles. *See Semones v. State*, 406 S.E.2d 483 (Ga. Ct. App. 1991), *State v. Sommerville*, 372 S.E.2d 688 (Ga. Ct. App. 1988), *Crosby v. Ga. Cas. & Sur. Co.*, 327 S.E.2d 505 (Ga. Ct. App. 1985). *Sommerville* involved a misdemeanor charge against an individual, and there is no

3

indication that a third-party assisted loading the goods. 372 S.E.2d at 688. In *Semones*, an employee assisted in loading the goods into the customer's vehicle, but when the goods fell from the vehicle, only the customer was criminally charged. 406 S.E.2d at 483. The court did not address any potential liability regarding the employer who assisted in loading the items. *Id.* In *Crosby*, the Court did not contemplate whether the phrase "loading for operation" applies to businesses or employees who assist with loading goods into customer's vehicles. 327 S.E.2d at 506.

Since "no Georgia cases squarely addressing the precise issues in this unique case have come to light," *Whiteside v. GEICO Indem. Co.*, 977 F.3d 1014, 1018 (11th Cir. 2020), and because there is no clear, controlling precedent from the Supreme Court of Georgia addressing the legal issue in this case, the Court **CERTIFIES** the following questions to the Supreme Court of Georgia:

1. Does O.C.G.A. § 40-6-248.1(b)(1) require a person—who is assisting the operator of a vehicle to load merchandise onto said vehicle—to "securely fasten" the load to the vehicle?

2. Under O.C.G.A. § 40-6-248.1(b)(1), would a person—who assists in loading or securing a load to a vehicle but is not operating the vehicle—be liable to a third party who is injured while the vehicle is in operation on a public road as a result of the load becoming loose, detached, or in any manner becoming a hazard to other users of the public road?

3. Under O.C.G.A. § 40-6-248.1(b)(1), does the occurrence of a load becoming loose, detached, or in any manner becoming a hazard to other users of the public road necessarily mean that the load was not securely fashioned? That is to say, is O.C.G.A. § 40-6-248.1(b)(1) a strict liability statute?

These questions are solely an issue of Georgia state law that should be decided by the Supreme Court of Georgia. In asking these questions, the Court "do[es] not intend to restrict the issues considered by the state court or to limit the state court's discretion in choosing how to frame or to answer these issues in the light of the facts of this case." *F.D.I.C. v. Skow*, 741 F.3d 1342, 1347 (11th Cir. 2013) (per curiam), *certified question answered sub nom. Fed. Deposit Ins. Corp. v. Skow*, 763 S.E.2d 879 (Ga. 2014). Indeed,

the Court "know[s] that the [Supreme Court of Georgia] may do as it wishes. With that caveat in mind, [the Court] 'ask[s] broadly for the state court's help in getting the state law right in this case.'" *Whiteside*, 977 F.3d at 1022 (quoting *Skow*, 741 F.3d at 1347). To assist the Supreme Court of Georgia, the entire record of this case is transmitted herewith.

      **SO ORDERED**, this 19th day of March, 2021.

                /s/ Leslie A. Gardner
                **LESLIE A. GARDNER, JUDGE**
                **UNITED STATES DISTRICT COURT**